STEVENSON, J.
 

 This appeal arises from Parent Construction, Inc.’s construction of a home for Earl and Jennie Heine and the subsequent claims of breach of contract and construction defects. In the final judgment, the trial court found that Parent Construction was due the final $36,825.46 owed on the construction contract and that the Heines were entitled to $78,742.64, representing the cost to repair a variety of construction defects, and, as a consequence of application of the economic waste doctrine, to $25,000 in diminution of value damages due to the home’s being built at the incorrect elevation. The Heines have raised a number of issues in this appeal. We affirm as to all issues and write to address only one issue — the Heines’ claim that the trial court erred in applying the economic waste doctrine.
 

 The Heines contracted with Parent Construction, Inc., for the construction of a home on John’s Island. The contract price was $840,825.58. After the contractor brought suit against them, alleging they had failed to make the final payment due under the construction contract, the homeowners counterclaimed, alleging, among other defects, that their home had been built at an elevation of 7.5 feet instead of the contracted-for 8.5 feet. The Heines insisted that, as damages for the elevation defect, they were entitled to recover the cost to tear down the home and to rebuild it at the correct elevation — $930,000 according to the Heines’ civil engineer. The contractor, on the other hand, insisted that the cost to cure the elevation defect was unreasonable and that, under the economic waste doctrine, the proper measure of
 
 *792
 
 damages was the diminution in the value of the home as a result of the lower elevation. According to Parent Construction’s real estate expert, the primary concerns for buyers in the John’s Island area — where the home was built — are the view, the home’s flood history, and the home’s insur-ability. The Heines admitted the home had not suffered any flooding during Hurricanes Frances, Jeanne, and Wilma. There was no evidence that the Heines had any difficulty obtaining insurance. The Heines’ real estate expert opined that the home’s lower elevation resulted in only a “nuisance” diminution in value of $25,000. Following a bench trial, the judge found that the economic waste doctrine was properly applied to the elevation defect and awarded $25,000 in damages for the same. The Heines insist that this was error.
 

 Grossman Holdings Ltd. v. Hourihan,
 
 414 So.2d 1037 (Fla.1982), is the seminal case on the economic waste doctrine. There, the Hourihans contracted for the construction of a home in a planned development. The model and the drawings at the sales office depicted the home with a southeast exposure. The construction contract provided that the builder would construct the home “substantially the same” as in the plans and specifications at the sales office, or as the model home. Subsequent to the signing of the contract, the Hourihans saw a new drawing at the sales office depicting their soon-to-be constructed home facing in the opposite direction. The Hourihans brought this to the contractor’s attention and indicated they wanted the contraeted-for exposure. The contractor refused to change the plans and constructed a mirror image of the home. The Hourihans filed suit. The trial court found that the contractor had breached the contract, but refused to award damages on the theory that to do so would constitute economic waste, noting the home had increased in value since the date of the contract. The Third District held that the economic waste doctrine did not apply in the residential construction setting and this decision was appealed to our supreme court.
 

 The supreme court held that the economic waste doctrine did apply in the residential construction setting and adopted section 346(l)(a) of the Restatement (First) of Conteacts (1932), as the law for the measure of damages in a claim for breach of a construction contract.
 

 “(1) For a breach by one who has contracted to construct a specified product, the other party can get judgment for compensatory damages for all unavoidable harm that the builder had reason to foresee when the contract was made, less such part of the contract price as has not been paid and is not still payable, determined as follows:
 

 (a) For defective or unfinished construction he can get judgment for either
 

 (i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or
 

 (ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste.”
 

 414 So.2d at 1039 (quoting Restatement (First) of Contracts § 346(l)(a) (1932)). The comment to the subsection provides that “[t]he purpose of money damages is to put the injured party in as good a position as that in which full performance would have put him; but this does not mean that he is to be put in the same specific physi
 
 *793
 
 cal position”; that “[s]ometimes defects in a completed structure cannot be physically remedied without tearing down and rebuilding, at a cost that would be imprudent and unreasonable”; and that “[t]he law does not require damages to be measured by a method requiring such economic waste.” Restatement (First) of Contracts § 346(l)(a) cmt. b (1932).
 

 The supreme court went on to hold that, while the record supported the trial court’s finding that restructuring the house would result in economic waste, it had erred in refusing to consider the award of damages because the home had increased in value. 414 So.2d at 1040. The court held that damages should be measured from the time of the breach and remanded the case to the trial court to afford the homeowners the opportunity to demonstrate that, on the date of delivery, the home actually built was worth less than it would have been worth had it been built in accordance with the contract.
 

 Here, among other things, the Heines claim that the trial court erred in applying the economic waste doctrine because the economic waste doctrine is not properly applied where there is an intentional breach of the contract nor where, in the contract, the parties have agreed to a cost to repair remedy. We reject both arguments.
 

 As for the first of these claims, assuming, without deciding, that a contractor’s intentional breach of the construction contract would preclude application of the economic waste doctrine, the Heines are nonetheless entitled to no relief. The trier-of-fact found that there was no intentional breach by the contractor. We have reviewed the record and conclude that it contains competent, substantial evidence to support such finding.
 

 We similarly reject the Heines’ claim that the language in their contract barred application of the economic waste doctrine. A standard form contract was utilized by the parties in this case. The standard contract contains a provision providing that “[t]he Contractor shall promptly correct Work ... failing to conform to the requirements of the Contract Documents, whether observed before or after Substantial Completion, and whether or not fabricated, installed or completed” and that “[t]he Contractor shall bear costs of correcting such rejected Work....” The Heines insist that, as consequence of the inclusion of such language in the contract, the parties agreed to a cost to repair measure of damages, precluding the application of the economic waste doctrine. We are not persuaded that this provision in the parties’ form contract was intended to address the extraordinary situation presented here, where, to effect a “correction,” the entire completed home would need to be torn down and rebuilt, at a cost exceeding the total contract price. This court must employ a reasonable interpretation of the contract and the contract language. Certainly, a more explicit and specific provision would be required for this court to conclude that the parties intended to contract away application of the well-recognized economic waste doctrine.
 

 In sum, having considered all issues raised, including those not expressly addressed in this opinion, we affirm the judgment appealed.
 

 Affirmed.
 

 DAMOORGIAN, J., and PHILLIPS, CAROL-LISA, Associate Judge, concur.